THE PEOPLE OF THE STATE OF NEW YORK ex rel. PARKLIN OPERATING CORPORATION, Appellant, against WILLIAM S. MILLER et al., Constituting the Board of Taxes and Assessments of the City of New York, Respondents.

Argued October 8, 1941; decided November 27, 1941.

*Israel Hoffman* for appellant. Courts below failed to give effect to the rule. (*People ex rel. Manhattan Square Beresford, Inc.*, v. *Sexton*, 284 N. Y. 145.)

*William C. Chanler,* Corporation Counsel (*Alfred T. White* and *Arthur H. Goldberg* of counsel), for respondents.

The courts below properly refused to adopt the conclusion of relator's witness as to the reconstruction cost, less depreciation, of the building and were warranted in finding a higher building value in view of the countervailing evidence. (*Banner Milling Co.* v. *State*, 240 N. Y. 533; *Commercial Casualty Ins. Co.* v. *Roman*, 269 N. Y. 451; *People ex rel. Third Ave. R. R. Co.* v. *Tax Commissioners*, 212 N. Y. 472; *Dougherty* v. *Milliken*, 163 N. Y. 527; *Matter of City of New York* [*Jamaica Bay*], 250 App. Div. 124; 275 N. Y. 458; *Shabotzky* v. *Equitable Life Assur. Society*, 257 App. Div. 257; *Ensign* v. *Travelers Ins. Co.*, 193 App. Div. 369; 233 N. Y. 521; *Ballin* v. *Apperson Realty Corp.*, 258 App. Div. 264; 283 N. Y. 754.)

LEHMAN, Ch. J.   The relator is the owner of land in the city of New York, upon which a twenty-story building completed in January, 1925, has been erected.   The land and building were assessed by the Board of Taxes and Assessments for the year 1934 at a value of $2,050,000, and for the years 1935 to 1939 at $2,000,000 or slightly less.   By certiorari proceedings the relator challenged these assessments, claiming that the total value of the land and building was only $1,400,000.   The court at Special Term found that in the year 1934 the value of the land was $715,000 and the value of the building was $1,250,000, and the total value of the land and building was $1,965,000 and that during each succeeding year the value of the land remained unchanged but the building depreciated slightly.   The assessments were reduced to the values so determined.   The Appellate Division affirmed the order of Special Term.

At the hearing in Special Term the relator produced in evidence the contracts made prior to 1925 for the erection of the building, and a builder of admitted experience gave testimony in regard to the reproduction cost and depreciation of the building.   According to his testimony, supported by the original contracts, the original cost of erecting the building was $1,063,940.   His testimony showed also that, after allowance for variations in building costs and deduct-

ing two per cent annually for depreciation, the reproduction cost of the building, less depreciation, was $883,000 for the year 1934, and varied slightly during the succeeding years. The Board of Taxes and Assessment produced no testimony in contradiction and did not attempt to show the reproduction cost of the building less depreciation; yet in fixing the total value of the land and building for the year 1934 and succeeding years, the justice at Special Term gave to the building a value far greater than the cost of reproduction less depreciation as shown by the relator's evidence. This, the relator claims, constitutes error as matter of law.

A real estate expert, qualified by experience and by study of the sales of property, both improved and unimproved, in the same neighborhood as relator's property, but without experience as builder or contractor, gave testimony that the value of the relator's land and building was greater than the sum at which they were assessed. It appears from his testimony that he arrived at the value of the building by capitalization of actual or potential income, but checked his conclusion, against his estimate of cost of the building on a "cubic foot" basis. In addition the defendants-respondents showed that the building was insured for $1,250,000. This evidence would doubtless sustain the finding of value of the justice at Special Term, if he was justified in disregarding the testimony of the relator's building expert that the cost of reproduction less depreciation was much less than the value so fixed.

The Tax Law (Cons. Laws, ch. 60), section 8, provides that "All real property subject to taxation shall be assessed at the full value thereof." The Administrative Code of the City of New York (L. 1937, ch. 929) provides that "The assessed valuation of each such parcel shall be set down * * * in two columns. In the first column shall be stated, opposite each such parcel, the sum for which such parcel would sell under ordinary circumstances if wholly unimproved; and in the second column, the sum for which such parcel would sell under ordinary circumstances with the improvements, if any thereon." (§ 158-1.0, subd. b.)

The two statutes must be read together. The statutory test of the full value of property is the price at which the property would sell under ordinary circumstances. Aside from the statutory provisions, that constitutes, indeed, the only practical test of full value where exactly similar property can be readily bought at a fair price in an open market from willing sellers, or can be readily sold at a fair price to ready buyers. Where real property is of such a nature that ready buyers for it could not be found even in ordinary circumstances in any market, it may be impossible to apply that test, and then other tests of full value must be used. (*People ex rel. N. Y. Stock Exchange Building Co.* v. *Cantor*, 221 App. Div. 193 [opinion by FINCH, J.]; affd., 248 N. Y. 533.) That is not the case here.

Here the undisputed evidence establishes that the building upon the land was erected for use as a store, office and loft building and that the net income derived from rentals is substantial. It is also not disputed that unimproved land in the same neighborhood which could be appropriately improved for similar purpose, is under ordinary circumstances bought and sold in an open market. Sales of similar property, improved or unimproved, in the same neighborhood, can do no more than furnish the data upon which the tax assessors or the court can estimate the price the property would bring in ordinary circumstances. Such evidence is persuasive where the property previously sold and the property presently to be valued by the assessors are in all respects similar and the conditions which might reasonably affect the price which a ready buyer would be willing to pay for such property remain unchanged. From the nature of the problem, however, it is plain that evidence of sales made at one time can never constitute conclusive proof that similar price could be obtained at some other time. That can never be determined by mathematical computation or necessary inference from undisputed facts.

Evidence of income derived, or which can be derived, from real property may at times constitute more persuasive evidence of the price at which the income-producing property

can be sold in ordinary circumstances than evidence of actual sales of more or less similar property under more or less similar conditions, for we know that in ordinary circumstances investors will pay for income-producing property a price measured in large part by the amount and certainty of the income which can be obtained from such property. On the other hand, we also know that an investor will not pay more for an income-producing property than the amount for which he could acquire at less cost property which would with equal certainty produce an equal income, either by purchase in the open market or by purchasing unimproved property and erecting upon it a similar improvement.

For these reasons we have recently said in *People ex rel. Manhattan Square Beresford, Inc.*, v. *Sexton* (284 N. Y. 145 [opinion by CONWAY, J.]): " The value of the improvement arrived at by capitalization of potential or actual income may well be weighed and considered but if it be more than reconstruction cost less depreciation, at least in the absence of extraordinary circumstances not present here, the latter still remains the maximum value which may be assessed upon the property." That case was decided after the order of Special Term in the proceedings we are now reviewing was entered. The rule stated in that case applies with equal force here.

It is true that there the court expressly found that the reproduction cost of the improvement less depreciation was less than its value as fixed by the court. Here there is no such finding, and the respondents seek to sustain the order of the courts below on the ground that the court at Special Term could properly reject the opinion evidence of the cost of reproduction produced by the relator, though such evidence has not been seriously contradicted, and could then base determination of value on other evidence. Doubtless evidence of cost of reproduction may be rejected by the court at Special Term, even though it is not contradicted, where there is reasonable ground to question the truth or accuracy of such testimony. Where capitalization of potential or actual income indicates a value much greater than the

claimed cost of reproduction, a court would at times be justified in rejecting the evidence of such cost of reproduction, otherwise not impeached; for the income that can be obtained from rentals of space bears some relation to the supply of space available in similar buildings, and the supply of space in similar buildings will usually keep pace with the profit that can be derived. In this case, however, the record shows quite clearly that the proof of cost of reproduction was not rejected because in the opinion of the court it was unreliable, but rather because the court regarded it as irrelevant even if true when capitalization of actual or potential income indicated a value higher than cost of reproduction. That, we have said in *People ex rel. Manhattan Square Beresford, Inc., v. Sexton* (*supra*), may not be done.

For these reasons the orders should be reversed and the matter remitted to the Special Term for a new hearing, with costs in all courts to the appellant to abide the event.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Orders reversed, etc.