Bergan, J.
Three separate parcels are considered together on this appeal from final orders in tax certiorari proceedings in the city of Albany for the year 1948. As to two of the parcels, the parties agree that the respondent commissioner assessed at full value; in the third the issue of value is not sharply disputed.
The crucial question presented is the ratio that the assessed value of property generally in the city of Albany bears to its full value. A Referee has found in these proceedings that this ratio is 64.5% and the Special Term has confirmed the finding reducing all of the assessments according to this ratio.
There are at least five diverse official expressions of the ratio that assessed value bears to full value in the tax district involved, presented in one form or another, at the current term of this court.
There is testimony in this record that for the year 1948 the rate of equalization of the City of Albany, established by the Board of Supervisors in pursuance of section 50 of the Tax Law, was 96%. There is proof that the ratio established by the State Board of Equalization for the same period was 93%. The proof of these official determinations is in the record without objection as to relevancy or competency, and by stipulation of the parties.
There is also before us the opinion of the Special Term in a proceeding in which a 1948 tax assessment became material, taking judicial notice of the fact that in the large number of certiorari proceedings “ it has been usually stipulated in such proceedings that real property in the city of Albany has been assessed at about 85% of its full value.” (Matter of Some Sav. Bank [Associates Discount Corp.], 196 Misc. 427, 431, affd. 276 App. Div. 715.)
There is a finding of a Referee that the rate is 72.4% (People ex rel. Yaras v. Kinnaw, 277 App. Div. 815) and another that the rate is 72% (People ex rel. Ten Broeck Apts. Corp. v. Kinnaw, 276 App. Div. 722).
The decision here reviewed does not reflect any consideration given by the Referee to the equalization ratios of the State and *720 county agencies. Not only was this proof in the record by stipulation, but it is direct proof on the question of equalization, and its competency has been judicially recognized. (People ex rel. Syracuse Trust Co. v. Matt, 258 App. Div. 853, mod. 283 N. Y. 241; People ex rel. Bingham Operating Corp. v. Eyrich, 186 Misc. 434.)
In People ex rel. Bennett Hotel Co. v. Cucci (263 App. Div. 761) this court affirmed an order based in part on proof of State and county ratios (see Cases and Briefs, App. Div. [3d Dept.], No. 3075). There is also a discussion of this record in People ex rel. Bingham Operating Corp. v. Eyrich (supra). In the Syracuse Trust Co. case (supra) a certificate showing the rate of equalization established by the Board of Supervisors of Oneida County was held to be competent by Judge Cbouch and became the basis of his initial determination of tax equality in the city of Utica.
Upon a rehearing he held that other direct proof upon the question of the equality, i.e., the opinion of specialists on the rate prevailing in the city, and the opinions of some of the assessors showing the rate was higher than the supervisors’ certificate, was sufficient on the weight of evidence in that case to outweigh the bare certificate.
The provisions of section 293 of the Tax Law do not expressly establish the relationship of the sample parcels of property to the question of inequality. The ratio resulting from the sample parcels is not made prima facie or presumptive evidence of inequality in the tax district; it is not expressly related to inequality, and it is in a statutory context which deals with other subjects of inquiry as well as inequality.
Its exact and definitive significance in the statutory scheme has always been open to some doubt. The Court of Appeals in People ex rel. Hagy v. Lewis (280 N. Y. 184) carefully delimited itself to the precise question before it, the alternative methods which could be used in calculating the sample parcels. No other competent evidence on the inequality was in that record. (See Cases and Briefs, App. Div. [3d Dept.], No. 2853, 255 App. Div. 916.) The language of the Court of Appeals (p. 188) suggests a reservation of mind which could not possibly accord any conclusive effect to this method of proof.
The tax district here is a large one. The total assessment of real property for the year involved was $402,446,614 (Proceedings of the Common Council for 1948, Vol. 2, Reports). If this sum is only 64.5% or 72% or 72.4% of full value, the *721 full value of 100% at which the commissioner is commanded to assess the district by section 8 of the Tax Law would be from one hundred fifty to two hundred million dollars higher.
The magnitude and public importance of the problem of tax equality in this tax district; the widely divergent official viewpoints in the several records before us on the ratio of assessed value to full value; the failure of the Referee to reconcile the conflict of evidence on this question or reflect in his decision any consideration given to the proof before him by stipulation on the State and county ratios, all lead us to the opinion that a new hearing should be had.
Whatever may be said of the sufficiency of these factors individually considered, in their totality they warrant the view that there should be a new hearing.
This course is indicated for the further reason that there is here presented for the first time a clearly drawn issue between two methods of reaching equality in the tax district. The impact of direct proof, as approved by recent judicial decisions, upon computations from sample parcels, seems never to have been presented or decided and the question should be settled on an adequate record.
At the new hearing there should be a full, careful and objective examination into the factors of tax equality in the district. Such utilization of evidentiary aids in determining this question as have been made available by judicial approval should be developed in the record as the parties may be advised.
The course here adopted in this respect follows that in People ex rel. Parklin Operating Corp. v. Miller (287 N. Y. 126) where a new hearing in a tax certiorari proceeding was directed upon a failure to give full consideration to competent elements of the evidence in the record.
The orders appealed from should be reversed on the law and the facts and new hearings ordered; and the proceedings referred to an official referee, with costs to abide the event.
Heffernan, Brewster and Coon, JJ., concur; Foster, P. J., dissents.
Orders appealed from reversed, on the law and facts, and new hearings ordered; and the proceedings referred to an official referee to be designated by this court, with costs to abide the event.
The referee is directed to report to this court.