Burke, J.
(dissenting). We do not suggest that cost of construction is not relevant, that it may not be taken into consideration as bearing on value. That it may be so considered is an old rule recognized in many cases prior to Matter of 5 East 71st St. v. Boyland (7 N Y 2d 859) and Matter of 860 Fifth Ave. Corp. v. Tax Commission of City of N. Y. (8 N Y 2d 29). (See, e.g., *319 People ex rel. Amalgamated Props, v. Sutton, 274 N. Y. 309; Ettlinger v. Weil, 184 N. Y. 179, 183; People ex rel. Four Park Ave. Corp. v. Lilly, 265 App. Div. 68; Matter of Melcroft Corp. v. Weise, 256 App. Div. 291; Great Northern Ry. Co. v. Weeks, 297 U. S. 135; cf. People ex rel. Rome, W. & O. R. R. Co. v. Hicks, 105 N. Y. 198 [a railroad property tax case].) In fact, in the 5 East 71st St. and 860 Fifth Ave. cases, the over-all return under ordinary commercial operations supported the cost of construction; whereas here, the rent return under ordinary commercial operation concededly fails to support the cost of construction. We do criticize as erroneous in law the holding of the Appellate Division — and also the holding of this court insofar as it refuses to meet the issue — that cost of construction is prima facie evidence of value in the case of “ a newly-erected structure built especially for prestige and advertising value as well as for the headquarters use of its owner. ’ ’ (Matter of Pepsi-Cola Co. v. Tax Comm. of City of N. Y., 19 A D 2d 56, 59.)
While the well-settled rule is that capitalized net income is the best measure of the value of commercial rental property* (People ex rel. Parklin Operating Co. v. Miller, 287 N. Y. 126; Matter of City of New York [Madison Houses], 17 A D 2d 317), it has now been decided that this measure must be displaced as “false” where the building is of such renown that the court feels that its owner must benefit economically thereby, over and above the rental commanded by the building. In such a case, it is said, the rental value of the space occupied by the owner-tenant, Seagram, must be valued not in proportion to the value of space occupied by the other tenants but at some higher value that reflects the business advantage accruing to one whose name is associated with such an outstanding and well-known building. Since the petitioner failed to so value its space it is held to have failed to carry the burden of showing excessive assessment.
Although this court has no general power to review the fairness and accuracy of real property assessments (Matter of City of New York [Fourth Ave.], 255 N. Y. 25), yet, where the Appellate Division has made explicit its method and the elements of value considered, any errors of law therein are presented to *320 us for review. (People ex rel. Kings County Light. Co. v. Willcox, 210 N. Y. 479, 492; People ex rel. Jamaica Water Supply Co. v. State Bd. of Tax Comrs., 196 N. Y. 39, 53; People ex rel. Rome, W. & O. R. R. Co. v. Hicks, 105 N. Y. 198, 202, supra; Matter of City of New York [Exterior St.], 285 N. Y. 455, 458; of. People ex rel. Hotel Paramount Corp. v. Chambers, 298 N. Y. 372.) The Appellate Division could have granted leave to appeal in this case for no other reason than to bring its legal theory of value up for review.
The narrow and highly technical character of the rule applied by the Appellate Division may be highlighted by comparison with Matter of Pepsi-Cola Co. v. Tax Comm. of City of N. Y. (19 A D 2d 56, supra) decided by the same court three months after the instant case. There, the court was confronted with a brand new structure quite similar in novelty to the Seagram Building in that it " is unusually distinctive and individualistic in appearance, [and] is set back approximately 14 feet on Park Avenue and 34 feet on 59th Street to provide on said sides a promenade and plaza ornamented with plants and shrubbery.” (19 A D 2d, p. 57.) Yet the court held that it is not “ in the same category as the Seagram Building, that is, a newly-erected structure built especially for prestige and advertising value as well as for the headquarters use of its owner.” (19 A D 2d, p. 59.) Since both are new, held for business rental, and used as headquarters for the owner, the only difference is the presumed benefit accruing to the Seagram Company from having its name associated with an architecturally superior and well-known building.
“ Value ” under section 306 of the Real Property Tax Law is market value given willing sellers and buyers (Administrative Code of City of New York, § 158-1.0; People ex rel. Parklin Operating Corp. v. Miller, 287 N. Y. 126, 129, supra; People ex rel. Gale v. Tax Comm. of City of N. Y., 17 A D 2d 225). In our view, this approach to value necessarily excludes any element that is unique to the present owner of a building. Any increment in Seagram’s outside business enterprises deriving from public appreciation of the Seagram Building will not pass to a buyer of the building in a sale. Such an element would disappear if the building were sold to another investor, engaged in another business or in no business at all, other than real estate invest *321 ment. The good will follows Seagram and cannot be regarded as real property value inherent in the building itself.
Of course, the prestige of the Seagram Building undoubtedly enhances the value of the building in any hands. This is undoubtedly real estate value—value which is transferable in a sale, and for which a buyer will pay. Such value also affects the rental commanded by the building. But, if tenants are willing to pay more for space in the Seagram Building than for similar space elsewhere, that is fully reflected in the capitalization of earnings. In turn, it would seem to follow that such capitalization adequately comprehends any increase in value that the building would bring in a sale—without resorting to concepts foreign to real estate value.
By the consideration of a so-called value element without regard to its place in light of the ultimate statutory norm of market value, and thereby displacing income capitalization as an acceptable measure of value and giving undue prima facie effect to cost, the Appellate Division has committed legal error for which the order appealed from should be reversed and the case remitted for reconsideration without regard to any supposed theory that the building is a specially built structure representing more of a real estate investment in its owner-occupant’s business than a commercial office building.
Judges Dye, Furd and Bergan concur with Chief Judge Desmond ; Judge Burke dissents in a separate opinion in which Judges Van Voorhis and Scileppi concur.
Order affirmed.

 The city offered no testimony as to economic value, i.e., capitalization of net income.