*355 OPINION OF THE COURT
Frank S. Rossetti, J.
This tax certiorari proceeding involves a mobile home park on Broadway (State Route 110) in the unincorporated community of North Amityville, Town of Babylon, Suffolk County.[1] The tax years under review run from March 1, 1992 through March 1, 1999.[2]
The subject property is an irregularly shaped parcel of about 21 acres. It is improved with 369 mobile home pads or lots laid out along various private streets on the property. The average size of a pad is roughly 25 feet by 60 feet (i.e., 1,500 square feet), although a few lots in a separate, newer area are generally 50 feet by 100 feet (i.e., 5,000 square feet). All but a few of the pads were occupied with mobile homes or trailers for the years under review and hookups were provided for electricity and water (heat was apparently provided by propane gas tanks). The mobile homes are individually owned and the pads on which they are sited are leased from petitioner by said owners on a month-to-month basis. Other improvements on the property consist of a two-story residence/office, a one-story maintenance building and two thirds of a three-unit retail building.[3]
Prior to 1954, mobile homes were not subject to real property taxes. In 1952 a lower court had confirmed such freedom from tax, but noted that the greatly expanding use of mobile homes had imposed severe financial burdens on localities in the form of police, fire, education and other municipal services for the residents of such homes. (See, Matter of Stewart v Carrington, *356 203 Misc 543, 546.) Legislative action was recommended (see, supra) and the Legislature responded by adding mobile homes to the definition of real property under a predecessor to the Real Property Tax Law. (See, RPTL 102 [12] [g]; New York Mobile Homes Assn. v Steckel, 9 NY2d 533, 536-537, appeal dismissed 369 US 150.) The cited Court of Appeals decision upholding the constitutionality of this statute observed its underlying purpose was to secure reimbursement from trailer dwellers for the expense of providing said municipal services to them. (See, New York Mobile Homes Assn. v Steckel, supra, at 536.) A legislative memorandum accompanying the statute indicated its intent was to have mobile home owners pay their fair share of the real estate taxes which support said services. (See, supra, at 537, n 1.)
In this proceeding the parties stipulated to the value of the land and all improvements except the mobile homes. Thus the sole remaining issue is the value of the mobile homes and this distilled itself into an issue of the proper method of valuation. Both parties have essentially agreed that the proper over-all method for evaluating the property is to value the mobile homes separately each year and add the total value thereof to the corresponding stipulated value of the land and other improvements. Some mobile homes on subject are exempt from tax and said section 102 (12) (g) mandates that exempt mobile homes be separately assessed in the name of the owner thereof. The landowner is generally responsible for the taxes attributable to mobile homes on its property (see, New York Mobile Homes Assn. v Steckel, supra, at 537), but the necessity for separate assessment of exempt homes means they have to be individually valued (see also, Real Property Law § 233 [w]). Considerations of consistency and equity argue for similar valuation of similar property (cf., Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356; Foss v City of Rochester, 65 NY2d 247, 254), and thus we find the separate valuation of all mobile homes, exempt and nonexempt, proper under the tax assessment statute and the circumstances at bar (see also, 9 Opns Counsel SBEA No. 29, at 59-60).
Petitioner’s mobile home appraiser relied on an ostensible market value approach to value the individual homes, based on an appraisal guide published by the National Automobile Dealers Association (NADA). This guide lists base values for mobile homes by manufacturer, year of manufacture and size, and provides adjustments for regional location, age, condition and additions. Said appraiser used this guide to find a base *357 value for each unit and increased such by á uniform location adjustment and then by individual age, condition and additions adjustments to find final adjusted values for the mobile homes. He also developed a replacement cost less depreciation value for the homes, as a check and an upper limit. Respondent’s appraiser used a more conventional market data approach based on nine comparable sales in two adjacent mobile home parks a dozen or so miles from subject. He derived a single base unit value from said comparable sales and then derived values for the individual mobile homes from that base unit value. His final values show no overassessments.
Both sides agree the burden is on petitioner to overcome the presumption of validity attached to real property assessments and prove by substantial evidence that respondent’s assessments are excessive. (See, e.g., Matter of FMC Corp. v Unmack, 92 NY2d 179, 187, 188-189.) Unless and until petitioner makes out a prima facie case in this regard, said presumption is sufficient to warrant the upholding of such assessments. (See, e.g., Matter of Fistraw-Del Holding Corp. v Assessor for Town of Colonie, 235 AD2d 660, 661-662.) The issues of how to value mobile homes for tax assessment purposes, and of the propriety and validity of petitioner’s “book” method of evaluation, are relatively novel ones since there is no governing appellate authority[4] and, to the court’s knowledge, only one lower court case specifically dealing therewith (see, Fourth Garden Park v Town of Riverhead, Sup Ct, Suffolk County, June 4, 1997, Werner, J., index Nos. 5536/95, 26939/96, slip opn, at 1-6, affd 271 AD2d 531, supra). We have thus considered these issues in some detail herein and, on all the evidence, we find petitioner has not sufficiently evinced a prima facie case with respect thereto.
The primary problem with petitioner’s method is the unknown nature of the comparable sales and other data from which the NADA base values are derived. Petitioner had a mobile home dealer and broker testify as to the use of the NADA guide by dealers and financing companies and agencies, but neither this ostensible expert on the acceptance of NADA *358 in the “business world,” nor petitioner’s mobile home appraiser were able to shed much light on exactly how NADA computed or “abstracted” its base values. Apparently comparable sales were used, but petitioner was unable to indicate where they were from or whether they were averages (see, Latham Holding Co. v State of New York, 16 NY2d 41, 45-46, 47), or whether they were otherwise adjusted to arrive at the value charts used for said base values (cf., Matter of Stoneleigh Parkway v Assessor of Town of Eastchester, 73 AD2d 918, 919, 920, lv denied 49 NY2d 705). It also appears other unspecified data was used, but seemingly since NADA considers its data and methods proprietary, no substantial information is available with respect thereto. In light of this absence of underlying information, petitioner’s appraisal violates the court rule requiring identification of comparable sales with sufficient particularity (see, Uniform Rules for Trial Cts [22 NYCRR] § 202.59 [g] [2]; see also, Matter of Rusciano & Son Corp. v Roche, 118 AD2d 861, 862) and this is not some minor or technical violation. Without some specification of the data underlying NADA’s values, respondent is deprived of any real opportunity to cross-examine with respect to such data’s applicability to this proceeding and the comparability of the sales therein to the subject mobile homes.
Petitioner’s first argument in defense of its appraisal is that any fair and nondiscriminatory method which yields a realistic market value may be used to value property for tax certiorari purposes (see, e.g., Matter of Allied Corp. v Town of Camillus, supra). However, the seminal concepts are fairness and equity (see, e.g., supra; Matter of Merrick Holding Corp. v Board of Assessors, 45 NY2d 538, 541) and, as indicated, the purpose behind the statute adding mobile homes to the definition of real property is to insure that mobile home owners pay their fair share of real property taxes (see, 356, supra). Generally, market value is the basis on which taxes are apportioned (see, RPTL 305; Foss v City of Rochester, supra, at 253) and the more direct and preferred method for determining market value is the market data approach (see, e.g., Matter of Allied Corp. v Town of Camillus, supra). A fundamental error in petitioner’s appraiser’s analysis is his refusal to value the property in its existing condition (see, RPTL 302 [1]) and in accordance with the statutory mandate that it be treated as real property (see, RPTL 102 [12] [g]). Certainly mobile homes can be and have been treated as personal property in most contexts, but we are not concerned with most contexts. We are concerned *359 with mobile homes that are fixed in place on a continuing and settled basis (see, 360, infra; see also, Ba Mar, Inc. v County of Rockland, 164 AD2d 605, 608-609, appeal dismissed, lv denied 78 NY2d 877, 982), and whose occupants thereby consume significant municipal services. It is this similarity to more conventional homes which was the impetus for the classification of mobile homes as real property in the first place, a classification the Court of Appeals specifically found rational (see, New York Mobile Homes Assn. v Steckel, 9 NY2d 533, 538-539, supra). For mobile homes that are in fact mobile and move around as motor vehicles on a regular basis, the statute is inapplicable (see, RPTL 102 [12] [g] [1]). However, for trailers whose wheels or tires are removed and that are hooked up to utilities in a durable manner and surrounded with permanent or established improvements, a classification as taxable real property is not unreasonable. Concomitantly and more pertinently, a method of evaluation which values mobile homes in a manner similar to that used for more typical residences and homes is also reasonable and appropriate, particularly since park-sited mobile homes can generally be deemed a low-cost alternative to such residences and homes (see, Ba Mar, Inc. v County of Rockland, supra, at 609; see also, Appraisal Institute, The Appraisal of Real Estate, at 43 [11th ed]). Petitioner argues that mobile homes are deemed real property only by the Legislature, but frankly, as far as this proceeding is concerned, that is what matters. Hence petitioner’s evaluation of the mobile homes as personal property or chattels is not consistent with the statute’s language and intent,[5] or with their actual existing use and condition. Correspondingly, the *360 •actual market for these homes does not appear to so value them (see, at 360, infra).
A further indication of petitioner’s attempts to fit the valuation of mobile homes into the parameters of its seemingly lower-priced NADA guide is its modification of the definition of market value. Instead of defining such in terms of a willing but uncompelled buyer and a willing but uncompelled seller (see, e.g., Grant Co. v Srogi, 52 NY2d 496, 510), petitioner’s appraiser “further” defined market value as what “a willing buyer would reasonably pay a retail dealer.” Valuing the subject homes on this basis does not produce a realistic value since it is divorced from the actual market at issue, to wit, sales between existing and future homeowners (see also, Fourth Garden Park v Town of Riverhead, supra, slip opn, at 3-4).
A theoretical ground petitioner raises for its rejection of a normal comparable sales approach is the supposed improper inclusion of locational elements in such sales. Petitioner contends the value derived from the location of the mobile homes is attributable only to the land and such value is reflected in the rent charged. Certainly location is an important part of the value of the underlying land, but it is also an important factor in the value of the mobile homes thereon. Petitioner makes much of the supposed mobility of trailers, but its inventory of the 267 units on subject in 1992 discloses that not a single mobile home owner moved his or her unit out of petitioner’s park during the ensuing seven years (see also, Ba Mar, Inc. v County of Rockland, supra, at 608-609).[6] Hence, the value of a mobile home that actually moves around is essentially irrelevant here. As observed, the genesis for the taxation of mobile homes in trailer parks was their increasing use as homes rather than mobile vehicles (see, 356, 358-359, supra; see also, Ba Mar, Inc. v County of Rockland, supra, at 609). Indeed, the testimony of petitioner’s own dealer/broker expert indicates that a mobile home is usually bought because the buyer “likes where it sits.” Petitioner cites no authority for its conclusion that value from location is or must be attributed only to the underlying land. The evidence indicates the applicable market does otherwise and that a favorable location enhances the value of both the land and the homes thereon.
In this regard, it should be noted that under Real Property Law § 233 (the Mobile Home Owners Bill of Rights) existing *361 mobile home owners and prospective mobile home purchasers have legally protected rights and interests in the continuation or commencement of their tenancy and occupancy of the underlying land. (See, Real Property Law § 233 [b]-[e], [i], [n], [t] [1]; [u], [v]; People ex rel. Higgins v Orsland, 183 AD2d 175.) Contrary to the apparent belief of petitioner’s appraiser, a park owner does not have the unfettered right to evict a mobile home owner since the grounds for eviction are limited by said statute (see, Real Property Law § 233 [c], [d]; Ba Mar, Inc. v County of Rockland, supra, at 610; see also, Real Property Law § 233 [u]). Hence, although a mobile home may lose the benefit of a favorable location if moved away, while in place the mobile home’s location is a legally protected and economically important element associated therewith. Consequently, petitioner’s appraiser’s failure to consider the location of the mobile homes other than through a gross regional adjustment (see, 356-357, supra) is another reason for finding its NADA valuation inadequate.[7]
Petitioner’s appraiser also argues that resale prices of park-sited mobile homes are similar to sales of cooperative and condominium units in that the sum of fractional interests usually exceeds the value of the whole. However, petitioner’s would-be analogy ignores the fact that there are statutes which specifically require condominiums and cooperatives to be valued as a whole, and as if a single, undivided apartment building. (See, Real Property Law § 339-y [1] [b]; RPTL 581 [1] [a]; Matter of Greentree at Lynbrook Condominium No. 1 v Board of Assessors, 81 NY2d 1036, 1039; Matter of South Bay Dev. Corp. v Board of Assessors, 108 AD2d 493, 500.) This fictional valuation of coops and condos divorced from the actual market for the individual units thereof is designed and intended to favor these forms of ownership (see, Greentree at Lynbrook Condominium I v Board of Assessors, Sup Ct, Nassau County, Feb. 5, 1990, Rossetti, J., slip opn, at 4-5, affd sub nom. Matter of Greentree at Lynbrook Condominium No. 1 v Board of Assessors, 184 AD2d 642, affd 81 NY2d 1036, supra). There are no similar artificial limits placed on the valuation of mobile homes or trailer parks and no comparable legislative intent to favor *362 this type of home. Rather, as observed, the indicated intent is that mobile home owners pay their fair and equitable share of real property taxes (see, 355-356, 358, supra; see also, Foss v City of Rochester, 65 NY2d 247, 254, supra). Moreover, it has been held that adding the value of the individual mobile home units to the value of the land does not result in a total value in excess of full value (see, Matter of Morley v Town of Oswegatchie, 152 AD2d 862, supra).
Petitioner also claims an alleged dearth of comparable sales data justifies its failure to use a normal comparable sales approach. Petitioner’s appraiser contends mobile home sales are not recorded in the County Clerk’s Office and it is difficult to otherwise obtain information concerning them. However, respondent’s appraiser was able to find nine comparable sales in two mobile home parks admittedly some distance from subject and even petitioner’s appraiser found six such sales in a nearer park. More significantly, in the noted case where petitioner’s NADA valuation was also rejected, 86 comparable sales were found, albeit in a different town. (See, Fourth Garden Park v Town of Riverhead, Sup Ct, Suffolk County, June 4, 1997, Werner, J., index Nos. 5536/95, 26939/96, slip opn, at 7, supra.) Petitioner’s mobile home park rules (and apparently those of other such parks) require that all sales in the park be reported to the park manager since petitioner’s permission is necessary therefor, with such consent not to be unreasonably withheld (see, Real Property Law § 233 [i] [1]). The testimony of petitioner’s appraiser that he “made no conclusion” whether sales records were maintained by petitioner and did not recall making inquiries relative thereto was simply evasive. The evidence indicates the respondent assessor has records of exemption applications by tax exempt mobile home units and it also appears UCC filings with the County Clerk are another source of data for mobile home sales. Further, notwithstanding petitioner’s insinuation that sales information was difficult to obtain from the parties thereto, its appraiser was able to obtain information from a subsequent purchaser/owner for at least one of petitioner’s sales. Indeed, if sales, particularly of units on subject, did show overassessment, it would appear to be in the interest of the unit owners as well as the park owner to maintain or make such information available. In short, petitioner has not clearly or specifically shown why sales information cannot be extracted from trailer park and other records and verified by the park manager or the mobile home owners. We therefore do not find petitioner *363 to have demonstrated that there was insufficient comparable sales data available for an adequate market data approach.
Petitioner also placed great emphasis on the supposed complexity of the appraisal problem here as another reason for using its NADA approach, with the mobile homes on subject being manufactured over a 39-year period by 41. manufacturers with varying amenities and an allegedly constantly changing inventory. However, as noted, the changes in inventory were de minimis (see, 360, n 6, supra)[8] and the adjustments for amenities were also minimal for over 85% of the mobile homes (e.g., less than 12% of the 1992 units had amenities valued over 5% of the unit’s total value and only about 2% of those had amenities valued over 10%). Indeed, petitioner’s appraisal described these amenities as adding only “marginal contributory value.”[9] Additionally, while it appears the total disregard of the individual manufacturers by respondent’s appraiser was contrary to mobile home market considerations, the differences in manufacturers and the years of manufacture were not shown to be beyond reasonable adjustment, particularly as to the latter since most of the units were clustered around a reasonable time span (i.e., the mid to late 1960’s). Thus we do not find petitioner to have demonstrated any extraordinary circumstances precluding the use of a properly investigated and adjusted market data comparable sales approach.
Petitioner went to great lengths to demonstrate alleged inadequacies and errors in respondent’s said approach and there seemingly is substance to many of its complaints. Further, it comes with ill grace for respondent to implicitly indict petitioner for not using its own and other apparent sales information when respondent’s appraiser did not use any subject sales and instead used comparable sales in better quality parks some distance away. However, in the context of this case, the only relevance of petitioner’s critique of respondent’s appraisal is if such showed the comparable sales method was totally unavailable or unusable in this case (cf., Matter of City of Troy v Kusala, 227 AD2d 736, 739, 741, lv denied 89 NY2d 801). Seemingly, respondent’s appraiser could and should have used more *364 and better comparable sales and made more and better adjustments to arrive at more accurate market values. Nonetheless, such goes to how well this specific appraiser executed his comparable sales method, not to the validity of the market data approach in general. In view of the other noted evidence in this case, we do not find petitioner’s objections against respondent’s appraisal to establish that a properly prepared and adjusted comparable sales approach would not yield reasonably reliable market values.
Petitioner’s final argument is that even if its NADA valuation is inadequate, the replacement cost less depreciation values found by its appraiser fix the maximum values for tax assessment purposes. It concludes that since its said values are less than the market values found by respondent, the former must be adopted by the court as the values herein. The genesis for the indicated cost ceiling rule is the commonsense notion that a buyer will not pay more for a building than what it would cost to build it in its current condition. Such a rule is consistent with the real property appraisal concept of substitution (see, Appraisal Institute, op. cit.). However, generally the cost approach is a method of last resort, when the other accepted methods are not available or useable, and this reluctance to use said approach is largely because of the subjective nature of the estimates that must be made to account for depreciation. Prior cases have found failures in this regard to result in overvaluation (see, e.g., G.R.F., Inc. v Board of Assessors, 41 NY2d 512, 514), but, contrary to petitioner’s argument, overvaluation is a symptom of said underlying problem and not the cause for the limited use of this method. Construction costs can be underestimated as well as overestimated, and an excessive concern to fully account for all possible species of depreciation and obsolescence can result in an overestimate of these elements of said approach, especially in light of the large subjective components thereof. Even in the seminal cases recognizing said cost maximum rule, it has been held that the court is not required to accept a cost approach if there are reasons for rejecting same. (See, e.g., People ex rel. Parklin Operating Corp. v Miller, 287 NY 126, 130-131.) Petitioner’s mobile home appraiser was not an engineer and he did not clearly demonstrate that the base cost values he used were appropriate for the mobile homes at issue (cf., e.g., Matter of Fistraw-Del Holding Corp. v Assessor for Town of Colonie, 235 AD2d 660, 662, supra; Matter of Guilderland Ctr. Nursing Home v Town of Guilderland Bd. of Assessment Review, 195 *365 AD2d 902, 904). More significantly, the depreciation factors he used ranged up to 80% and this was an extraordinary amount for homes which are still being used and lived in. Again, other than referring to general, blanket rates in the Boeckh manual, these gross deductions were not adequately explained. Further, petitioner’s appraiser did not see fit to rely on his cost method other than as a backup and would-be ceiling (he testified his NADA approach was the only acceptable method for appraising mobile homes such as on subject), and we see no reason why we should accord it more or determinative weight. (See, Matter of Mayos Clothes v Board of Review, 47 AD2d 531, lv denied 37 NY2d 712.) We also note the use of this method is not required because of the unavailability of the superior market data approach (cf., Matter of Onondaga County Water Dist. v Board of Assessors, 45 AD2d 258, 261). Considering all the circumstances, we do not find petitioner to have shown that its cost approach can be relied on as an adequate and realistic measure of market value.
Accordingly, based on the parties’ noted trial stipulation (see, 355, n 2, supra) and our findings herein, it is ordered, that the tax proceeding for the 1992/1993 tax year under Nassau County index No. 13838/97, and the tax proceedings for the 1993/1994 through 1998/1999 tax years under Suffolk County index Nos. 93-17012, 94-15623, 95-15568, 96-19570, 97-18443 and 98-17646, respectively, be and the same hereby are consolidated under Suffolk County index No. 93-17012, and it is further ordered, that said consolidated proceeding be and hereby is dismissed.
This writing constitutes the decision of the court in compliance with RPTL 720 (2).[10]

. This case was assigned to the undersigned by Honorable Edward G. McCabe, Administrative Judge of this court, after transfer from Suffolk County Supreme Court. Said transfer was pursuant to order of Honorable Mary M. Werner, former Administrative Judge of said latter court, due to the apparent recusal of the Justices of that court because a retired Justice of the court had an interest in the subject property.

. Pursuant to stipulation, the proceedings for the 1992/1993 through 1998/1999 tax years were to be consolidated or tried jointly as determined by the court. Accordingly, we are herein ordering consolidation of said proceedings under the above index number (see, at 365, infra; see also, at 355, n 1, supra). Additionally, although the 1999/2000 tax year was not originally part of these proceedings, the parties stipulated at trial that the value found by the court for the 1998/1999 tax year be carried forward to said subsequent year.

. The northerly two thirds of said retail building are on a parcel petitioner leased long term from the owner of the building. The two units on petitioner’s said parcel are in turn subleased to retail subtenants (i.e., a restaurant and an insurance office).

. Petitioner cites two appellate cases as supporting its use of a book value for mobile homes, but in both the use of such value was not contested and thus the validity of such a method was not decided. (See, Matter of Morley v Town of Oswegatchie, 152 AD2d 862, 863-864; Hidden Forest Homes v Board of Assessors, 139 AD2d 924; see also, Fourth Garden Park v Town of Riverhead, 271 AD2d 531, affg Sup Ct, Suffolk County, June 4, 1997, Werner, J., index Nos. 5536/95, 26939/96, slip op, at 2-3.)

. ‘ Petitioner cites one appellate case involving a tax lien where a diner was characterized as personal property and deemed owned by the owner of the building, not the owner of the land (see, J.K.S.P. Rest. v County of Nassau, 127 AD2d 121). However, the issue there was title, not valuation, and in fact the diner had been subject to real property assessment, thus having been considered real property for assessment purposes (see, supra, at 132-134). Petitioner also relies on an appropriation case where a mobile home was found to be realty, it being petitioner’s position that the result would have been different if the. condemnee did not also own the land on which the home was located (see, Teelon v State of New York, 49 Misc 2d 754). While said decision indicated such land ownership was an important factor, it also referred to the improvement of the property by a driveway, garage, patio and significant landscaping in determining the question of permanency relative to the larger question of realty versus personalty (see, supra, at 756). Such improvements are common to mobile homes on rented lots and, in any case, again assessment valuation was not at issue (see, supra, at 755-756) and no statute was present there deeming the subject property real property (see, J.K.S.P. Rest. v County of Nassau, supra, at 132).

. During said period, six units were removed because they burned, down and six were replaced with newer units.

. Said regional adjustment (of 4%) applied to a three-State area (i.e., New York, New Jersey and Pennsylvania). Thus, under petitioner’s analysis, a mobile home located in Pittsburgh, over 350 miles from subject, would be valued the same as an otherwise similar home on subject. We do not find this within any reasonable conception of comparability, particularly in view of the numerous local sales within 10 to 15 miles of subject (see, 362, infra).

. In 1992 there were no changes in inventory, in 1996 and 1997 there was only one change and in the other four years in issue only two or three changes, out of a total initial inventory of 267 down to a 1998 one of 261 mobile homes.

. Petitioner also argues that the inclusion of furnishings in mobile home sales is an additional reason for not using a comparable sales method, but it was not shown such were significant in terms of value or could not be reasonably adjusted for as was done with the noted amenities.

. Viewing of the subject or comparable properties is not required in a tax certiorari proceeding {cf., EDPL 510) and in light of our findings herein we do not deem such necessary or helpful {cf., CPLR 4110-c [1]). We accordingly decline petitioner’s request therefor, in the court’s discretion.