THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK DOCK COMPANY, Respondent, *v.* JACOB A. CANTOR and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants.   (Taxes for 1921.)

THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK DOCK COMPANY, Respondent, *v.* HENRY M. GOLDFOGLE and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants.   (Taxes for 1922.)

Second Department, February 1, 1924.

**Taxation — assessment — proceedings to review assessment of waterfront property in Brooklyn improved with piers and buildings — market so limited that evidence of reproduction cost less depreciation is admissible — evidence of reproduction cost should be limited to time of assessment.**

In proceedings to review the assessment of waterfront property in Brooklyn which was improved by piers and buildings used principally in transportation work, evidence of the cost of reproduction less depreciation is admissible, since it appears that the market value for the property is so limited that customary testimony of market price is not available or satisfactory to prove the value of the property.

Evidence of the cost of reproduction, however, of the buildings and piers should be limited to the time when the assessments were levied.

APPEAL by the defendants in each of the above-entitled proceedings from so much of a final order of the Supreme Court in each proceeding, each made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 21st day of May, 1923, as resettled by an order entered in each proceeding in said clerk's office on the 1st day of June, 1923, as reduces the assess-

ments of certain real property of the relator made for the purpose of taxation for the years 1921 and 1922, respectively.

The property affected extends some two and one-half miles along the Brooklyn waterfront, from Brooklyn Bridge to Red Hook Point, and is improved with 34 piers, 159 bonded and free warehouses, and 20 manufacturing buildings. It is divided upon the tax map into 27 separate tax lots.

*William H. King* [*George P. Nicholson, Corporation Counsel,* and *Eugene Fay* with him on the brief], for the appellants.

*John Hill Morgan* [*Curtis A. Peters* and *Henry N. Arnold* with him on the brief], for the respondent.

RICH, J.:

The assessed valuations, aggregating some $32,000,000, fixed by the defendants for the years 1921 and 1922, are attacked upon the ground of overvaluation, inequality and because of the inclusion of certain machinery, with reference to lot 3 in block 199, which the relator contends is personal property, and as to lot 61, block 515, because of the inclusion of the value of land not owned by the relator, although the only ground urged at the trial was overvaluation. The result of the decision of the Special Term is a most substantial reduction in the assessments in the aggregate of some $7,915,842 for the year 1921, and $8,549,148 for the year 1922.

Defendants, upon the hearing, offered evidence tending to show the cost of reproduction, less depreciation, of relator's piers and buildings. This was excluded upon the ground that it was incompetent and immaterial. The exception taken to this ruling brings up for review the only question involved in this appeal, which is, was it competent to show the replacement cost less depreciation of the relator's piers and buildings? Relator contends that it was not, and that the cost of reproduction, less depreciation of the improvements, only becomes competent evidence as some proof of value when there is no market or sale value of the property, and as authority for this proposition cites: *People ex rel. Powers* v. *Kalbfleisch* (25 App. Div. 432; 156 N. Y. 678); *People ex rel. Clearing House* v. *Barker* (31 App. Div. 315, 319; affd., 158 N. Y. 709); *People ex rel. Union Club* v. *O'Donnel* (N. Y. L. J. Feb. 15, 1908; affd., 126 App. Div. 916); *People ex rel. D., L. & W. R. R. Co.* v. *Clapp* (152 N. Y. 490, 496); *People ex rel. City of New York* v. *Keeler* (205 App. Div. 467, 473). It is urged by the appellants, on the other hand, that the cost of reproduction of the property is always some evidence of the sum for which the property would sell in ordinary circumstances, and is the

best evidence where it appears that there is no market value for the property, or so limited a market that the customary testimony of market price is not available, and as authority for this proposition cites: *People ex rel. Powers* v. *Kalbfleisch (supra)*; *People ex rel. Consolidated Gas Co.* v. *Wells* (193 N. Y. 614); *People ex rel. D., L. & W. R. R. Co.* v. *Clapp (supra)*; *People ex rel. Equitable Office Building Corp.* v. *Commissioners of Taxes & Assessments* (LEHMAN, J., N. Y. L. J. July 9, 1921); *People ex rel. N. Y. C. R. R. Co.* v. *State Tax Commission* (206 App. Div. 558); *Willcox* v. *Consolidated Gas Co.* (212 U. S. 19); *Bluefield Co.* v. *Public Service Commission* (262 id. 679, 692).

It is also contended by the appellants that the learned court at Special Term erred in adopting the estimates as to land values of relator's experts, made in disregard of recent sales and leases, which they concluded were " war values."

In the *Powers* case it was established that no market value existed; in the *Clearing House* case the building was not adapted for any other use so that its market value would not equal its cost; the same situation existed in the *Union Club* case. In the *D., L. & W. R. R. Co.* case the ties, rails, etc., were held to have no market value when detached from the land, and the cost of reproduction, less depreciation, was deemed the criterion under the circumstances. In the *New York Central* case, upon which the appellants to some extent rely (and which cites the *D., L. & W. R. R. Co.* case), the parties agreed that the correct method was cost of reproduction, less depreciation, but the referee adopted an erroneous method of fixing the cost of reproduction, less depreciation, as of the year 1915, and not as of the date of the assessment. The court said: " This rule prescribes the maximum, but not always the actual, value which may be adopted for assessment purposes. * * * As above suggested, the reproduction cost based on war values is not controlling, *but it is some evidence bearing on the question of actual value which must be considered by the Commission.*" The property assessed in this case was a retaining wall which had been constructed by the railroad company along the Erie canal to support filling upon which its ties were laid. But in all these cases it appears that the improvements assessed either had no market value or the market was so limited that customary testimony of market price was not available. Under such circumstances, while persons familiar with the value of real estate in the particular locality could express their opinions as to its real value, such evidence at the best is but the mere expression of an opinion, which is not altogether satisfactory. (*People ex rel. Powers* v. *Kalbfleisch, supra.)*

I am of the opinion, therefore, that the question presented

resolves itself into whether or not it has been established in the case at bar that the property, the subject of this proceeding, either was without a market value, or that the market for the same was so limited that customary testimony of market price is not available or satisfactory. If it has, although the experts called by the relator have had great experience in this line of endeavor, still, in view of the substantial reductions in the assessments, I think the learned court ought to have had before it all of the evidence that might have a remote bearing upon the question as to the value of the property, and while the replacement cost, less depreciation, is not conclusive, it is some evidence that the court ought to have taken into consideration and given it at least the weight, if any, to which it was entitled. (*People ex rel. N. Y. C. R. R. Co.* v. *State Tax Commission, supra.*)

On the question of sale value, the expert, Mr. Porter testified: " By the Court: Q. Is there any activity in waterfront property in Brooklyn? A. Now? Q. Has there been? Has not it been controlled largely by one or two organizations? A. By just a few people. It is held in large, great, big, large parcels. Q. It is not bought and sold like private houses or buildings, business buildings? A. Oh, not at all." While Mr. Pounds testified: " Q. You have a large number of buildings here which you put in at the rate of five cents per cubic foot. You did not know of any sale of a building at that rate, did you? A. Any sale? Q. Yes? A. *Why, there are almost no sales of buildings* of this type, we have sales of these old brick buildings, like these houses on the Heights, and here and there, a building that is used partly for industrial purposes, and the like of that, but there are almost no buildings left of this real type — there are some — *so that you can't compare that.*" And relator's counsel, when offering proof of the original cost of two of the piers constructed in 1916, said: " Piers are not bought and sold the way houses and lots are, and so as to make a basis for the valuation of our experts, I have to give them something to work on." I am of the opinion, under the circumstances, that the market for these properties, while there may have been some sales, was so limited that customary testimony as to the market price was not entirely satisfactory, and that " Therefore the value of the building for these purposes *must be determined by some other method.*" (*People ex rel. Union Club* v. *O'Donnel, supra.*)

It further appears that the estimates of relator's experts excluded from consideration the cost of reproduction, less depreciation, and to some extent at least were based on original and pre-war cost of construction, while they conceded that the cost of con-

struction in 1920 or 1921 was 100 per cent greater. Mr. Pounds stated: " Well, in 1920 and 1921, the prices for that kind of a building would be above the ordinary prices." The market for the buildings in the case at bar being so limited that customary testimony as to market price is not available or satisfactory, under the rule laid down in the *New York Central Case* (*supra*), the expert's valuations were based upon an erroneous theory. The value of the improvements must be fixed for assessment purposes according to the values *at the time such assessments are made,* and not, as the experts have valued them, at pre-war values.

The final orders should, therefore, be reversed on the law, and the proceedings remitted to the Special Term for rehearing, with costs in each case to abide the event.

KELLY, P. J., JAYCOX, MANNING and YOUNG, JJ., concur.

Final orders reversed on the law, and proceedings remitted to the Special Term for rehearing, with costs in each case to abide the event.