Felix J. Aulisi, J.
This proceeding is brought under article 13 of the Tax Law to review the assessment made by the Board of Assessors of the City of Glens Falls, New York, for the years 1957 through 1961 on certain real property owned by the petitioner in said city and known as the Queensbury Hotel. The ratio which the assessed valuation of the real property bears to its full value has been agreed upon to be 60% for the year 1957, and 62%% for the years 1958, 1959, 1960, and 1961. The only issue is overvaluation.
The property involved here consists of a parcel of land containing more than 81,000 square feet facing on three streets in the heart of the City of Glens Falls whose population is about 20,000. There is erected on the lot a brick garage and a five-story brick and cement hotel building with rent-producing stores, offices, barbershop, radio station, public rooms and 178 rooms available for rent. The hotel is not only expertly operated and maintained but its main entrance faces a well-kept public park, has an unusually fine setting and is regarded as one of the best in northeastern United States.
Originally started as a community project, the hotel and property was sold to the petitioner, Queensbury Hotel Corporation on September 30, 1956, after it had been listed for sale for some time by several hotel and real estate brokers. The purchase price was $850,000, of which $255,000 was allocated to personal property in the hotel. The petitioner paid $100,000 on the purchase price and gave a mortgage back for $750,000. At the time of the sale, the property was assessed for $563,880, and upon application to the assessors in May, 1957, the assessment was reduced to $453,880. The petitioner then embarked on an extensive program of making alterations, permanent improvements, repairs, renovations and installing new equipment to the cost of more than half a million dollars.
The full value and assessment under review of the property is as follows:
*303 Full Value of Land and
Improvements Rate Assessment
1957 ........................ $756,467 60% $453,880
1958 and 1959................. 1,056,760 62%% 660,475
1960 and 1961................. 1,060,760 ■ 62%% 662,975
We now come to the question of whether or not the assessors have overvalued the property to the extent claimed by the petitioner. That is not easy of solution, but I do not think it is overvalued to the extent claimed by the petitioner.
The petitioner urges that the respondent has overvaluated its property and same should be assessed as follows:
Full Value of Land and
Improvements Rate Assessment
1957.................... ...... $600,000 60% $360,000
1958................... ...... 650,000 62%% 406,250
1959, 1960 and 1961...... ...... 700,000 62%% 437,500
Section 8 of the Tax Law provides as follows: “ All real property subject to taxation shall be assessed at the full value thereof ”. “ Full value ’ ’ is synonymous with the term ‘ ‘ market value ” which means the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell. The statutory test of the full value of property is the price at which the property would sell under ordinary circumstances. Aside from the statutory provisions, that constitutes indeed, the only practical test of full value where exactly similar property can be bought at a fair price in an open market from willing sellers or can be readily sold at a fair price to ready buyers (Heiman v. Bishop, 272 N. Y. 83; People ex rel. Owens v. Schmiedel, 30 N. Y. S. 2d 378; People ex rel. Parklin Operating Corp. v. Miller, 287 N. Y. 126).
It is a cardinal rule which should never be forgotten that whatever property is worth for the purpose of income and sale it is also worth for the purpose of taxation. There is not one rule for measuring value for assessments and another for purchase and sale. Various items ordinarily enter into the worth of real estate; its condition, the cost of replacement, the purpose to which it is put, the public demand for such purpose, whether such demand is increasing or diminishing, the cost of its upkeep and management, the income which is derived therefrom and every other element which can reasonably affect its value (People ex rel. Lehigh Val. R. R. Co. v. Harris, 168 Misc. 685).
In reviewing the testimony I find an almost incredible variance in the value placed on the property by the experts. We have a wide difference of opinion among these witnesses as *304 to the cost of reconstruction and amount of physical, functional and economic depreciation. No doubt this is due in part at least to changing times and to what extent these changes may impress an expert. That there is physical, functional and economic depreciation is apparent. The changing of the type of construction of a hotel, motels, expressways and other means of fast transportation all have their influence on value. The exact amount, however, cannot be stated with any degree of accuracy. Reconstruction cost less depreciation may be much greater or it may be lower in money value than what such property will sell for. Many elements such as location, size of lot, neighboring area, transportation facilities and others, are taken into account by real estate experts in various percentages.
To further sustain its contention that the property is overvalued, the petitioner has offered considerable testimony on the capitalization of income method of valuation of real property. The customary procedure is to determine rental value of the property, deduct therefrom the operating expenses, and, if there is a profit, to capitalize the net profit at a percentage commensurate with the amount of risk involved. In my opinion this testimony is of no help in determining the full value of this property. The experts by using a system of accounting, bookkeeping, depreciation and financing which defies solution by the ordinary mind indicate that in the operation of the hotel the petitioner has sustained a substantial net loss every year since 1957, notwithstanding the fact that each year there was an increase in the gross sales which in 1960 reached over a million dollars. It is strange, indeed, that for some years prior to 1956 when the hotel was operated by a group of local businessmen a handsome profit was shown.
Weighing all the testimony, and giving due consideration to the credible evidence, I find and arrive at the conclusion that the fair value of the property for tax assessment purposes and assessed valuation of same is as follows:
1957 Full Value Rate Assessment
Land............. .... $140,000
Improvements..... .... 600,000
Total........... .... $740,000 60% $444,000
1958
Land............. .... 140,000
Improvements..... .... 700,000
Total........... .... 840,000 62%% $525,000
*305 1959, 1960, and 1961
Land................. 140,000
Improvements......... 800,000
Total............... $940,000 62^% $587,500
I further find that there is an overvaluation in the assessment of the petitioner’s real property and that the extent of such overvaluation is, for the years in question, as follows:
1957 ................................ $9,880
1958 ................................ 135,475
1959 ................................ 75,475
1960 ................................ 75,475
1961 ................................ 75,475
and that the said assessments should be corrected and reduced accordingly, and that the petitioner is entitled to a refund of any tax paid by it on or by reason of such incorrect assessment beyond the amount to be paid on such amount, with interest from the date of payment to the date of refund, together with the costs and disbursements of this proceeding.