Thomas P. Farley, J.
How are condominiums assessed for the purpose of real property taxation? Are the individual units separately assessed without regard to the value of the total property of which they form a physical part? Or, is the sum of the assessments against the combined units limited by the value of the property as a whole? Assessors throughout the State who must regularly face the problem are divided on the answer. Surprisingly, the question has not been considered by the courts in this jurisdiction, and the two reported decisions on the subject from outside the State of New York are split on the issue.
A residential condominium may be defined as a form of fee ownership of living space within a building, together with a proportionate undivided interest in the common areas or *562 elements of the land and buildings. The petitioners in this case comprise 144 out of 224 owners of condominium units contained in 15 town house styled buildings located in the Lido Beach section of the Town of Hempstead, New York. They seek review of the assessments made against their individual units, for one or more years, for the tax period from May 1, 1969 to May 1, 1975.
The development is situated on a 14.4-acre tract of land that runs from the south side of Park Avenue to the Atlantic Ocean. The 15 buildings, each of which are two stories in height, contain 1,008 rooms. They are divided into 5 studio; 110 one-bedroom; 101 two-bedroom and 8 three-bedroom type units having from three through six rooms, respectively. The owners of the 28 units housed in Building No. 1 face the ocean, and the area surrounding each building is attractively landscaped. The site is also improved with an oceanfront beach, a pool, recreational building, and paved parking areas.
Section 339-y of article 9-B of the Real Property Law, popularly known as the Condominium Act, states: "Each unit and its common interest * * * shall be deemed to be a parcel and shall be subject to separate assessment and taxation” but "Neither the building, the property nor any of the common elements shall be deemed a parcel.” On the other hand, the same statute further provides: "In no event shall the aggregate of the assessment of the units plus their common interests exceed the total valuation of the property were the property assessed as a parcel.”
The first proviso is relied on by the respondent county to justify the valuation of each unit separately, which course its appraiser pursued by utilizing market data obtained from actual sales of the units. Petitioners insist this method is erroneous and impermissible under the second proviso of section 339-y, which places a limitation on the total assessment that may be levied on the combined units. Their appraiser first estimated the value of the property as an entity, and arrived at the assessed value of the individual units by applying against the over-all valuation the percentage that each owner’s interests in the common elements bore to the whole.
In the opinion of petitioners’ expert, an identical rental apartment and condominium, existing side by side, must be appraised alike, and he evaluated the condominium complex as if it were a multifamily garden apartment house project. *563 He utilized the income approach to value, and relied on estimated income and expenses that were attributable to comparable rental properties. His valuation of the total complex, including land and buildings, were as follows:
5-1-69 5-1-70 5-1-71 5-1-72 5-1-73 5-1-74 5-1-75 $3,200,000 $3,355,000 $3,415,000 $3,640,000 $3,765,000 $3,780,000 $3,840,000
Petitioners’ position is supported by a memorandum issued by the State Board of Equalization and Assessment which, in part, states: "the assessor, when he first appraises a condominium, [should] ignore the Declaration provisions, ignore the sale prices obtained for the individual units by the promoters and ignore the common elements. He should step away from the condominium and apply the indicia of value which a purchaser would consider if he bought not a unit, but the whole property” (Memorandum dated August 23, 1974, p 3; emphasis supplied). The opinion of the board, while persuasive, is not controlling on the court and is more often disregarded than followed except in the City of New York. Petitioners also rely on an unpublished decision of the New Jersey Superior Court in Imperial House v City of Long Branch. This case directly held that the total assessment levied against the individual condominium units contained in the building was limited by the value of the property determined as though it were a conventional structure pursuant to existing statutory provisions (NJ Stat, § 46:8B-19). This statute, as enacted, was strikingly similar to 339-y, and provided: "The total of the assessments for tax purposes against the aggregate of all units constituting the condominium property shall not exceed the assessment which would otherwise have been made against such condominium property as a single parcel had it not been submitted to this act.”
In Pennsylvania, whose condominium law does not contain any limitation on the assessment of the individual units, the Commonwealth Court reached the opposite conclusion in Matter of Summit House Real Property Assessment Appeals (22 Pa Commonwealth Ct 462). This case held each unit must be assessed and valued as a separate parcel based on the statutory direction that: "Each unit and its proportionate undivided interest in the common elements * * * shall be assessed and taxed * * * as a separate parcel of real estate entirely independent of the building or property of which the unit is a part.” (Pa Unit Property Act, § 701; 68 Pa Stat, § 700.701.) It is interesting to note that the lower court in the Pennsylvania *564 case, which was reversed, had found that no distinction could be drawn between condominium owned and rental apartment houses, and stated: "There is no reason to assume that the legislature meant to imply that the sum of the parts of a building is more valuable than the whole.” (Matter of Summit House, 73 Pa D & C 2d 752, 757.) It should also be observed that the New Jersey Legislature in 1975 repealed the limitation placed on the assessment of condominium units. The legislative note accompanying the repeal found the special treatment accorded condominiums was unwarranted since both the historical and condominium form of ownership of real property equally enjoy the same rights, privileges, and exemptions (L 1975, ch 2, § 1, amdg NJ Stat, § 46:8B-19).
The legislative history of New York’s Condominium Act sheds light on the origin of the ceiling proviso but furnishes no real clue as to the legislative intent for its inclusion. The 1963 bill (SI 928 Pr 928) as originally introduced, set forth an alternative method of computation of the assessed value of a unit and its common interests. Under the proposed alternative, the land and buildings might be valued as a whole parcel and the unit’s assessed valuation determined by applying the unit’s proportion of the common interest against the "whole parcel” value. This is the method employed by the appraiser for the petitioners in this case. The proposed bill, at the same time, correspondingly inserted the restriction that (§ 339-y) "In no event shall the aggregate of the assessment of the units plus their common interests exceed the total assessed valuation of the land and building.” The final print of the bill, however, deleted the alternative method of assessment, but retained the ceiling provision, and section 339-y was enacted in this form in 1964.
By express declaration of section 339-g "[E]ach unit, together with its common interest, shall for all purposes constitute real property,” and under section 339-y, each unit is deemed a parcel subject to separate assessment and taxation. It might be said the inclusion in section 339-y of the further condition that the total assessment against the combined units shall not exceed the value of the property as a whole clearly evidences a legislative intent to maintain a balance between the assessment of the units and the property as an entity. If this be so, it is beyond doubt that the limitation placed on the assessment of the units is irreconcilable with the provisions of section 306 of the Real Property Tax Law requiring that: "All
*565 real property * * * shall be assessed at the full value thereof.” The assessment of real property not made in conformity with a statutory direction that it be at the full value of the real estate is illegal (Matter of Grumman Aircraft Eng. Corp. v Board of Assessors of Town of Riverhead, 2 NY2d 500, 510). Section 306, furthermore, is part of a comprehensive legislative enactment covering the assessment and taxation of all real property, and its scheme ought not to be abrogated by a statute of limited application (Fulton v Krull, 200 NY 105, 109). While it is the duty of the court to harmonize statutory provisions whenever possible (Levine v Bornstein, 4 NY2d 241, 244; Matter of Kaplan v Peyser, 273 NY 247, 150), where, on the other hand, they are in fact irreconcilable, the court must seek out and preserve the paramount intention even though this may lead to the rejection of some subordinate or secondary provision (McKinney’s Cons. Laws of NY, Book 1, Statutes, § 98, p 224). Established rules of statutory construction, moreover, dictate that a construction of a statute that would cause objectionable consequences or change time-honored rules of law should be avoided in the absence of a clear manifestation of such an intention (McKinney’s, Statutes, §§ 141, 148, 153, pp 281, 304, 332). Certainly, if section 339-y allows condominium units to be assessed at less than full value, it confers on their owners a preference not available to owners of other real property. When this happens, the attainment of equality and uniformity in taxation is frustrated, "for, if one taxpayer escapes payment, the burden is placed — disproportionately and unfairly — on another.” (Johnson v Smith, 297 NY 164, 170.)
The ceiling provision of section 339-y is objectionable from other viewpoints. The special method of assessing condominiums is basically contrary to the concept of condominium ownership created by the Legislature. The essence of the condominium idea is based on fee ownership of a single and separate parcel of real estate that is independently mortgageable, insurable, transferable, recordable, and taxable, without regard to the circumstance that the unit itself has no physical existence apart from the entire property. Although unit ownership differs in form from the traditional free standing fee, it possesses the identical substantive rights, privileges, and exemptions bestowed on the owners of all real property. Consequently, the subjugation of one form to a more advantageous method of taxation than the other is not supportable in fact or *566 theory. Real property is taxable in accordance with its value and not its form. Finally, the imposition of a select method of assessing condominiums actually results in the placement of a heavy and unreasonable burden on the individual unit owner. When protesting the assessment levied on his unit, the owner is compelled to first establish the value of the property as a whole before he ascertains the value of his unit. The expense of doing so would invariably thwart the institution, by a single unit owner, of a tax certiorari proceeding. The foregoing factors compels the court to find the ceiling formula in section 339-y to be invalid and unenforceable where it compels the assessment of the individual units at less than true value.
The requirement that all real property shall be assessed at its "full value” (Real Property Tax Law, § 306) has repeatedly been held to be synonymous with market value (Hellerstein v Assessor of Town of Islip, 37 NY2d 1, 3; Matter of Lane Bryant v Tax Comm. of City of N. Y., 21 AD2d 669, affd 19 NY 2d 715). Consequently, the petitioner in a tax review proceeding will prevail only if he can establish by a preponderance of the evidence that his property has been assessed at more than its full value (People ex rel. Parklin Operating Corp. v Miller, 287 NY 126; Matter of Hartland Arms v Tax Comm. of City of N. Y., 54 AD2d 700). The petitioners here have clearly not sustained that burden.
The numerical significance of the different approaches to valuation utilized by the parties is illustrated by the chart below which contrasts the value assigned to selected units by petitioners with the market value of the same unit as determined by the respondent for the particular year under review. The assessed value and the selling price of the units is included for comparison purposes.
Peti-Peti-Respontioners tioners dents Apt. Bldg. Total Unit Unit Selling Assessed Year No. No. Value Value Value Price Value 5-1-69 48A 6 $3,200,000 $13,120 $25,500 $30,300 $19,532 5-1-70 12A[1] 1 $3,355,000 $15,366 $30,000 $34,100 $22,333 5-1-70 35A 5 $3,355,000 $13,753 $27,500 $30,100 $20,833 5-1-70 45A 6 $3,355,000 $13,753 $27,500 $28,200 $20,833 5-1-71 79 A 10 $3,415,000 $14,000 $29,000 $27,000 $20,833 5-1-71 96B 13 $3,415,000 $16,083 $33,000 $29,150 $22,833 5-1-71 105B 14 $3,415,000 $16,083 $33,000 $33,100 $22,833 5-1-72 22A 2 $3,640,000 $14,924 $31,000 $34,600 $21,552 *567 5-1-73 31A 4 $3,765,000 $15,435 $33,000 $37,100 $23,036 5-1-73 99A 14 $3,765,000 $15,435 $33,000 $33,400 $22,322 5-1-73 18B[2] 2 $3,765,000 $17,357 $33,000 $30,500 $22,143 5-1-74 81A 11 $3,780,000 $15,498 $35,000 $39,000 $23,889 5-1-74 15B 2 $3,780,000 $17,804 $40,000 $42,150 $25,370 5-1-74 22B 2 $3,780,000 $17,804 $40,000 $42,000 $25,370 5-1-75 31B[3] 4 $3,840,000 $18,085 $42,000 $42,000 $26,111
The chart dramatically indicates the resale price of the units in every instance far exceeds the value ascribed by petitioners’ appraiser. This same trend would be applicable to all the units protested for all years under review. This necessarily follows from the fact that the over-all value of the property as an entity as found by petitioners’ appraiser for each tax year is even less than the selling price obtained by the developer for the combined units in 1966.
The prospectus received in evidence as petitioners’ exhibit one discloses 97 units were offered at $20,590, 98 at $23,590, 14 at $26,500, and 14 at $32,510.[4] The aggregate or gross sell out price obtained by the developer totaled approximately $5,135,000 which is $1,298,000 more than the value found by petitioners for the entire property for 1975, the last tax year under review, and $1,935,000 more than his valuation for the 1968 tax year.
The striking disparity in value highlights the difficulty encountered in attempting to draw meaningful comparisons between conventional rental apartments which are income producing and condominium owned units which are not. The courts have noted this difference by excluding condominiums from the rule (22 NYCRR 678.3) that requires the conduct of an audit of the books and records of income producing property before the filing of a note of issue in a tax review proceeding (Matter of Mallavarapu v Board of Assessment Review, Town of Ramapo, 42 AD2d 569). The market place has long been aware of the dissimilarity, and this has led assessors to claim that a condominium is intrinsically more valuable than an identical rental apartment (see, e.g., Matter of Summit House, 73 Pa D & C 2d, at p 755, revd 22 Pa Commonwealth Ct 462). Whether the inherent difference in *568 value between the two forms stems from the tax advantages afforded by private ownership or by the psychological demand of the market (cf. Berger, Symposium on Practical Problems of Condominium, May 11, 1964, published by Chicago Title Insurance Co.), may be uncertain. Nevertheless, the testimony presented in this case positively establishes that the difference rests on reality and not the legal fiction arising from the form of ownership. If every element of value affecting a property should be considered (cf. Matter of Queensbury Hotel Corp. v Board of Assessors of City of Glen Falls, 33 Misc 2d 302), the distinct character of the condominium ought to be recognized.
The market place draws a similar conclusion and seems convinced that an appraisal of a condominium by comparison with a conventional rental unit is outmoded. In areas where there is a proven condominium market, capitalization of net income has a limited utility. This appraisal method is now generally only employed as an underwriting guide to aid lenders in the event the sponsor’s effort at selling the property as a condominium should fail. Capitalization of income is then considered to set the lower limit of value assuming the property must be utilized as a rental project (American Institute of Real Estate Appraisers, Residential Condominiums: A Guide to Analysis and Appraisal [1976 ed], pp 16, 61). However, whenever sufficient data are available, the market approach has the strongest degree of reliability since it reflects the market’s reaction to all social and economic influences (ibid., p 60).
The application of these principals finds strong support in the facts of this case. Respondent’s appraiser reported and relied on market data culled from over 100 sales of units within this complex alone; 48 of which are units whose assessments are being challenged here. During the tax years under review, 96 of these units were resold within the following price range: one under $25,000; 25 between $25/30,000; 33 between $30/35,000; 23 between $35/40,000; 10 over $40,000; and 4 between $45/50,000.
This information was then used by respondent’s appraiser to allocate a value to the ocean front units located in Building No. 1, as well as the units contained in Buildings 2-15. The values so found by him for the various type units for each contested year, together with the value assigned by petitioners’ appraiser for the corresponding units and years is set forth in the following table.
*569 Type Unit 5-1-69 5-1-70 5-1-71 5-1-72 5-1-73 5-1-74 5-1-75 1A-14A 14,656 15,367 15,640 16,669 17,243 17,311 17,587 Resp. 28,000 30,000 32,000 34,000 36,000 38,000 40,000 1B-14B 17,537 18,387 18,713 19,948 20,632 20,711 21,044 Resp. 34,500 35,500 36,500 38,000 42,000 45,000 48,000 Studio A 12,800 13,420 13,660 14,559 15,061 15,119 15,359 Resp.[5] 16/ 17/ 18/ 25,000 19,000 21,000 22,000 1 Bedr. A . 13,120 13,753 14,000 14,924 15,436 15,496 15,744 Resp. 25,500 27,500 29,000 31,000 33,000 35,000 37,000 2 Bedr. A l 13,505 14,157 14,410 15,362 15,890 15,592 16,205 Resp.[5] 25/ 27/ 37,000+ 31,000 31,000 1 Bedr. B i 14,750 15,467 15,743 16,779 17,357 17,426 17,704 Resp.[5] 23/ 27,900+ 29,700 29/ 32,000+33,600+ 29,000 31,000 2 Bedr. B ; 15,072 15,800 16,083 17,145 17,732 17,804 18,085 Resp. 29,000 31,000 33,000 35,000 37,000 40,000 42,000 3 Bedr. B ; 15,360 16,103 16,390 17,472 18,071 18,144 18,430 Resp.[5] 29/ 31/ 33,000+ 37,000+ 39,000+ 40/ 42/ 34,000 36,000 57,000 60,000
Reference to the table shows petitioners’ method of appraisal consistently resulted in valuations significantly below those found by respondent through the use of comparable sales. Furthermore, the value placed on each unit by the respondent, with limited exceptions (cf. chart on page 566), is comfortably under the unit’s resale price, and without exception, is well above the assessed value of the individual units.
One conclusion to be drawn from the statistics gathered by respondent’s expert is that there is ample market data from which the value of the individual units can be determined without resort to the artificial comparison with conventional rental structures. The other is that a compressed assessment of each unit so that the aggregate assessment of all units will not exceed the value of the property as a whole produces a valuation substantially less than the "full value” of each separate unit. The imposition of such method of assessment under the circumstances prevailing here, is illegal, as noted before. The court is accordingly compelled, on the basis of the evidence before it, to reject the approach to valuation used by petitioners. Although the court disapproves of the methodol *570 ogy utilized by petitioners, it must find they have presented evidence at variance with the presumed correctness of the assessments (cf. People ex rel. Wallington Apts. v Miller, 288 NY 31). Respondent’s application to strike their appraisal is therefore denied as is petitioners’ motion for the same relief with respect to respondent’s appraisal report. Petitioners, however, have not sustained their burden of proving the assessments are incorrect, and their proceedings are dismissed in toto.

. Ocean view unit. All A units are lower, and all B are second floor units.

. Revised layout that was converted to a one bedroom unit (Exhibit B — addenda).

. This unit not protested. Included for comparison purposes.

. Subsequently, a minor revision of the plan reduced a few units to studio and one-bedroom units, while others were increased to two- and three-bedroom units. The change would not substantially affect the computations noted. The units selling at $26,500 and $32,500 front on the ocean.

. No useful comparison can be made between petitioners’ valuation of this type unit and respondent’s findings. The layouts of these units were revised, and the same type units have lesser or greater room area. Respondent generally assigned a value in accordance with difference in room size although he did not recall at the trial the particular factors relied on (see respondent’s appraisal report, Exhibit B — addenda). The range of value is given for informational purposes.