■ In the Matter of WHITE PLAINS PROPERTIES CORP., Respondent, v TAX ASSESSOR OF THE CITY OF WHITE PLAINS et al., Appellants. In the Matter of W. P. PROPERTIES CORP., Respondent, v TAX ASSESSOR OF THE CITY OF WHITE PLAINS et al., Appellants.—In consolidated proceedings pursuant to article 7 of the Real Property Tax Law to review the assessments of certain real property for the tax years 1971 through 1976, the appeal is from a judgment of the Supreme Court, Westchester County, dated July 25, 1978, which, *inter alia,* reduced the assessments on the property for each of the years in question. Judgment affirmed, with costs, on the well-reasoned opinion of Mr. Justice Sullivan at Special Term. Mollen, P. J., O'Connor and Mangano, JJ., concur.

Suozzi, J., dissents and votes to reverse the judgment and grant a new trial to fix the assessments on the basis of the land value and the depreciated cost value of the structure added thereon, with the following memorandum: The majority, relying on the opinion of Special Term, holds that the subject Macy's owned and operated department store in White Plains is not a specialty because "The record * * * establishes that the subject was not designed for unique purposes" (cf. *People ex rel. New York Stock Exch. Bldg. Co. v Cantor,* 221 App Div 193, affd 248 NY 533) and that, as was stated (by Special Term) in the *Sears, Roebuck* case *(Matter of Sears, Roebuck & Co. v Derderian,* Supreme Ct, Westchester County, July 19, 1977, Sullivan, J., affd 66 AD2d 777, mot for lv to app den 46 NY2d 712) " 'under no definition could the * * * building be found to be a specialty' " warranting the reproduction cost " 'method of proving value' " and "This being the case, market data may be developed to permit an income capitalization approach to value as in the *Sears* case, *supra,* [and other cases]". Unlike my colleagues, I would hold to the contrary that (1) the subject property, whose only income is that produced by the retail business conducted thereon, is a specialty even though it (a) may not have been designed for unique pur-

poses, (b) can be used "by any other department store" and (c) can be converted "to other uses", and (2) the reproduction cost less depreciation method is a more practicable and reliable approach to finding true or full or market value of this and other owner-operated department stores than the capitalization of gross sales method judicially sanctioned by the majority. A reading of Special Term's opinion reveals that in finding that the subject property was not a specialty, the court relied heavily on the failure of the City of White Plains' expert (Hiller) to "indicate any feature of the subject improvement which would render it unique to Macy's or prevent its use by any other department store. Neither did he testify to any features of the building which would prevent its conversion to other uses. Furthermore, he testified that if the subject premises were vacant he 'imagines' that it could be leased to another department store; that 'there seems to be a demand for department stores in White Plains' and that if the property was for sale another department store might be interested in purchasing it." Special Term further credited the bare conclusory assertions of the petitioner's expert. This witness testified, as the court noted, that the subject property was not a specialty in his opinion because "'it is not unique. There are any number of department stores occupied as department stores. It is not unique to Macy's. Any department store could occupy it. I don't believe that there is no market for such properties, because there is a market for such properties * * * The building itself could be converted to something else. It doesn't have to be a department store * * * but I think that the building could be utilized for other things besides a department store * * * So, in my opinion, I don't think it comes anywhere near the criteria of what a specialty is. I don't believe it is a specialty at all.'" I disagree with my colleagues' nonspecialty finding because the subject property is a classic example of a specialty as that term was defined in *People ex rel. Hotel Paramount Corp. v Chambers* (298 NY 372) and it is indistinguishable from the Macy's store in Queens in *Matter of Rego Props. Corp. v Tax Comm. of City of N. Y.* (34 AD2d 574) and the Abraham & Straus store in Nassau County in *Matter of Federated Dept. Stores v Podeyn* (32 AD2d 823), each of which was labeled a specialty by this court on the authority of *People ex rel. Hotel Paramount Corp. v Chambers (supra)*. In *People ex rel. Hotel Paramount Corp. v Chambers (supra,* p 375), which involved a transient hotel, Judge Fuld defined a specialty as "a term including real estate, which, unlike an apartment house or office building, produces income only in combination with a business conducted upon it." In *Matter of Rego Props. Corp. v Tax Comm. of City of N. Y. (supra)*, this court held that "Special Term erred in finding that petitioner's department store structure is a prestige building * * * Nevertheless, we affirm the order because we find that [petitioner's department store] is a specialty", citing *People ex rel. Hotel Paramount Corp. v Chambers (supra)*. In *Matter of Federated Dept. Stores v Podeyn (supra)*, this court refused to grant the county's motion seeking information as to the income of the store with the following statement: "Moreover, since the documents in question relate to the income, expenses and sales of a business conducted within the improvement and not to income attributable to the realty itself, they are limited in relevance to an inquiry whether the structural improvement is suitable to the site and whether the structural value of the subject building may be added to the value of the land * * * Accordingly, the income produced in the operation of this 'specialty property' is academic and irrelevant." The sole income of each of the structures involved in the *Paramount, Rego Props.* and *Federated* cases was that produced by the business conducted within each of

them. Each was judicially designated a specialty and valued by the depreciated cost method even though none of these structures fit any one of the other definitions of a specialty discussed by Special Term, to wit: (1) A structure designed for "unique purposes" as the private school in *Matter of Semple School for Girls v Boyland* (308 NY 382, 389); or (2) A " 'building or buildings constructed or peculiarly adapted to the conduct of the owner's business which cannot be converted to general industrial use without the loss or expenditure of very substantial amounts of money' ", such as the giant food processing plant in *Matter of Great Atlantic & Pacific Tea Co. v Kiernan* (49 AD2d 99, 100) and the industrial structures in *Matter of Sperry Rand Corp. v Board of Assessors, County of Nassau* (10 AD2d 720). It does not require expert opinion to recognize that just as the subject property was not unique in that it could be used by another department store or converted to other uses, the transient hotel in *People ex rel. Hotel Paramount Corp.* and the owner-operated department stores in the *Rego Props.* and *Federated* cases were not unique and could be similarly used by another owner for the same purpose or converted to other uses. Special Term's opinion neither acknowledges the definition enunciated by Judge Fuld in the *Paramount* case, nor does it suggest that this definition has been overruled or modified and, therefore, is not a prevailing opinion or definition. Neither does that opinion make any reference to *Matter of Rego Props.* or *Federated Dept. Stores,* or allude to any factual distinction between the subject department store and the department stores involved in those cases. Nor is there discernible in the record on this appeal and in the *Rego Props.* and *Federated* matters any factor or consideration which would warrant a different designation here. In relying on Special Term's opinion, the majority neither expressly or implicitly suggests that it purports or intends to overrule this court's determinations in *Matter of Rego Props.* and *Federated Dept. Stores,* or to disregard the specialty definition in *People ex rel. Hotel Paramount Corp. v Chambers,* which, in my view, is clearly applicable to the subject property. A reading of the opinion of Special Term discloses that the court adhered to the same rationale and approach it followed in *Matter of Sears, Roebuck & Co. (supra).* There, although Special Term took note of the specialty definition in *People ex rel. Hotel Paramount Corp.,* no explanation was given as to why it was not applicable to that owner-operated department store. As to this court's earlier holding in *Matter of Rego Props.,* Special Term's following discussion of it in *Matter of Sears Roebuck* reflects the speculation engaged in to avoid the impact of that holding and this court's reliance on *People ex rel. Hotel Paramount Corp.* and to justify not following it: "In support of its position that the Sears building is a specialty, respondent has placed much emphasis on *Matter of Rego Properties Corp. v Tax Commission of the City of New York,* 34 AD2d 574. Said case involved a determination by the Appellate Division, Second Department that the Macy's building in Rego Park, New York was a specialty. Special Term had held that the department store structure was a prestige building and used the building's cost of construction as an indicator of value. The Appellate Court upheld the Court's determination as to value but stated that Special Term erred in finding that the structure was a prestige building within the framework of *Matter of Seagram & Sons v Tax Commission of the State of New York,* 18 AD2d 109, affd 14 NY2d 314. By no stretch of the imagination, however, did the Court extend its finding in the *Macy Rego Park* case to encompass all department stores and indeed, the Court may have been inclined to hold as it did because of the newness of the building (the certiorari proceeding included the assessment year in which

construction was completed), and the unexplained injection of $2,000,000. into Macys' expert's capitalization figures, as recited in the Appellate Division's decision." I submit there is nothing in the record of the *Rego Props.* case to warrant such speculation by Special Term. Even assuming that it was the newness of the building which inclined the court to use the depreciated cost approach, it was necessary for the court to designate the structure a specialty in order to pursue that valuation approach under such circumstances. I submit that an owner-operated department store in White Plains is as much a specialty as the Macy's department store in Queens County and the A & S department store in Nassau County and that the rules of assessing these structures should not differ from county to county, nor should the principles to be applied in judicially reviewing them be as unsettled and unclear as they appear to be to me. The root of the problem is directly attributable to Special Term's disregard of the specialty definition of *People ex rel. Hotel Paramount Corp.* which clearly fits the subject structure and the imposition as a condition of qualifying as a specialty that such a structure also fit one of the other definitions of a specialty to be found in *Matter of Semple School for Girls v Boyland (supra), Matter of Great Atlantic & Pacific Tea Co. v Kiernan (supra),* and *Matter of Sperry Rand Corp. v Board of Assessors, County of Nassau (supra),* which relate to structures totally dissimilar in use and purpose from the subject property and the structures in *Paramount Hotel (supra), Rego Props. (supra)* and *Federated (supra).* In light of the concession by the petitioner's expert that a conversion to an office use would be expensive, it could be argued that the subject property is a specialty on that basis alone. Significantly, Special Term's opinion ignores the rationale underlying the Court of Appeals rejection of the capitalization of income method and adoption of the depreciated cost method to value the transient hotel in *People ex rel. Hotel Paramount Corp. v Chambers (supra),* which is equally applicable to the subject property. The Court of Appeals explained its rejection of the hotel income as an appropriate and reliable predicate for assessing the structure in the following terms (298 NY 372, 374-375, *supra):* "the sales price of the hotel enterprise, as well as the hotel income, reflected not only the value of the real estate * * * but the worth of such additional elements as management, good will, hotel furniture and furnishings, inventory of food and beverages and the usual hotel services. The manner of determining what portion of the * * * yearly income is attributable to the real estate and of segregating that from the portion derived from the other items, the record does not disclose * * * The relevance of income or profit produced in the operation of such specialty property is necessarily limited—in the valuation of the real estate—to the inquiry whether the structural improvements are suitable to the site and whether the full structural value of the building may be added to the value of the land. (See *People ex rel. New York Stock Exch. Bldg. Co. v. Cantor,* 221 App. Div. 193, affd. 248 N.Y. 533; [and citing other cases].)" In *People ex rel. Hotel Astor v Sexton* (159 Misc 280, 285, affd 256 App Div 912, mot for lv to app den 280 NY 853), Special Term, in a similar vein, stated: "The income derived from the Hotel Astor is no criterion of its value * * * It is reasonably doubtful whether any hotel income is a very substantial factor in determining its real estate value, since the running of a hotel is in great degree a matter of business rather than one of rental." More recently, the Court of Appeals, in *G. R. F., Inc. v Board of Assessors of County of Nassau* (41 NY2d 512, 513), reasserted this rationale in the following manner: "Capitalization of income generally provides an acceptable and, in the absence of market data, a preferred

method of valuing rental property (see *Matter of Pepsi-Cola Co. v Tax Comm.,* 19 AD2d 56, 60). Where, however, a building is held for the owner's own use, and especially where the building bears the owner's name, income capitalization may not adequately reflect the property's total value *(Matter of Seagram & Sons v Tax Comm.,* 18 AD2d 109, 112, 116, affd 14 NY2d 314, 318; *Matter of Pepsi-Cola Co. v Tax Comm.,* 19 AD2d 56, 61, *supra)."* Similarly, here the application of an income or economic approach, or a variation thereof as in the *Sears* case and the case at bar, presents the same problems since it is difficult to separate the income attributable to the earning power of the real property from the income attributable to the entrepreneural skills, reputation and good will of the owner-operator. On this record, such a separation of income is neither practical nor necessary. We look no further than the gross sales generated by the subject store and the nearby Sears store for the same years to find persuasive and substantial support for this reasoning.[1] The fact that the Sears store, which is smaller than the subject store,[2] has regularly generated significantly higher gross sales than the subject property, lends great credibility to the rationale underlying the rejection of the income approach to valuing structures whose sole income is produced by the business conducted thereon. Another rationale for adopting the reproduction cost less depreciation method may be found in *People ex rel. Hotel Astor v Sexton* (159 Misc 280, 286, *supra),* wherein it was stated that "The cases have held that where the actual market is limited, reproduction cost of buildings is a good criterion. *(People ex rel. New York Dock Co. v. Cantor,* 208 App. Div. 52; *People ex rel. New York Stock Exchange B. Co. v. Cantor,* 221 id. 193; affd., 248 N. Y. 533.)" Even if, as the expert testified, the subject property can be used by another department store and another department store might be interested in purchasing it if it were for sale, as the former Mr. Justice Hogan, one of our State's leading judicial specialists in assessment proceedings, pointed out, department stores "are rarely bought and sold in the market" *(Matter of Saks & Co. v Board of Assessors of County of Nassau,* Supreme Ct, Nassau County, April 26, 1974, affd 52 AD2d 585). In any event, the expert opinion that there is a market for such property is not supported by any factual

---

**1.** The gross sales for Sears and for Macy's for the years 1973-1976 are as follows:

| Sears Sales* | | | Macy's Sales | | |
|---|---|---|---|---|---|
| 1973 | - | $30,997,687 | 1973 | - | $29,796,000 |
| 1974 | - | 31,075,197 | 1974 | - | 29,355,000 |
| 1975 | - | 31,903,846 | 1975 | - | 30,348,000 |
| 1976 | - | 31,850,737 | 1976 | - | 30,069,000 |

&ast; This figure does not include $319,000 per year for concession and parking.

**2.**

| | Sears Store | Macy's Store |
|---|---|---|
| Land Area | 104,200 sq. ft. | 154,000 sq. ft. |
| Retail Area | 260,000 sq. ft. | 335,255 sq. ft. |
| Parking | 510,000 sq. ft. for 1,148 parking spaces plus municipal parking | Municipal Parking |

evidence and rests solely on bare conclusory assertions. More important and critical to the existence of a market for this property are its availability and the price at which it could be acquired if placed on the market. The record is devoid of any evidence of its availability in the foreseeable future or the asking price to support the expert's conclusory statement. Absent a basis for such a finding, it is more realistic and practicable to evaluate or to consider this property as one for which the actual market is a limited one and the reproduction costs of the structure, the better criterion of value. As a result of the nonspecialty finding as to the subject property, the reproduction costs are admissible only to establish the maximum value (see *Matter of 860 Fifth Ave. Corp. v Tax Comm. of City of N. Y.,* 8 NY2d 29, 32; *Matter of Shereff v Tax Comm. of City of N. Y.,* 42 AD2d 593). In the absence of comparable sales, the market data approach is not a viable method of valuing this property leaving only the income method, which in this case, will presumably result in a lower market or assessed value than by using the depreciated cost method. The method of valuation sanctioned here and in *Matter of Sears, Roebuck & Co. v Derderian* (Supreme Ct., Westchester County, July 19, 1977, Sullivan, J., affd 66 AD2d 777, mot for lv to app den 46 NY2d 712, *supra)* is, in my view, a far cry from the capitalization of income (economic) approach which has been regarded as a sound guide to valuing investment property. It is a fictionalized variation of this method and is neither a reliable nor a sound guide to finding full or market value in accordance with section 306 of the Real Property Tax Law.[3] Whereas the traditional income approach normally capitalizes the fair market rental income (usually the result of arm's length bargaining between owner and tenant), here it is the net income from gross sales which becomes the focus of the capitalization computations and which is used to produce a hypothetical rental. This fictionalized rental presumably reflects the amount that the owner-operator of this department store would be willing to pay as rent for the facility. It is arrived at by multiplying the annual gross sales by a factor which is a matter of expert opinion and may vary from property to property in order to produce a hypothetical rent comparable to the annual rentals paid by other department stores reported in national trade studies and statistical analyses and reports. Here, the factor applied was 3% as compared to the 3½% factor used in the *Sears* case. This resultant hypothetical rental is then reduced by a percentage of expenses for management, legal and accounting fees and insurance costs which may also vary from case to case. Here, the same percentage was used as was used in the *Sears* case, 2½%. The next step is to apportion the net income between land and buildings. The first step in this procedure is to take the fair market value of the land and multiply it by an appropriate rate of return on this investment (this figure ranged from 8½% to 9¼% in *Sears* and from 8½% to 9% in the case at bar). This result is then subtracted from the total net income figure to give a figure representing the net income allocable to the buildings. This latter figure is then capitalized by a percentage which consists of the

---

**3.** "Full value is equated to market value. * * * The test of 'full value' of realty for purposes of assessment for taxation is the price at which the property would sell under ordinary circumstances. *People ex rel. Parkin v Miller 1941,* 287 N. Y. 126. 'Full-Value' * * * is synonymous with 'Market Value', which means the amount which one desiring but not compelled to purchase will pay under ordinary circumstances to a seller who desires but is not compelled to sell. *Queensbury Hotel Corp. v Board of Assessors City of the City of Glen Falls* 1962, 226 N.Y.S. 2d 977." (Kramer, Assessment for Real Property Tax Purposes [1975], p 5.)

interest rate of return and a recapture rate for reimbursement of the investment to produce the fair market value of the building which, when added to the previous figure which had been fixed as the fair market value of the land, gives the total fair market value of the property. The two fair market value figures for land and improvements are then multiplied by the equalization rate which results in assessed valuation figures for land and buildings and a total assessed valuation. My misgivings about the use of this method rather than the depreciated cost method, are accentuated by the results actually reached by this approach as to the subject property and the Sears store for the same years.[4] While part of the difference in resulting valuations may be attributed to the difference in the annual equalization rates and the factor applied to the gross sales, the disparity is largely attributable to applying the return of investment percentage to the stipulated value of the land, and then utilizing the remaining rental to compute the value of the structure. The application of the rate of investment return to the stipulated value of the land rather than the owner's investment therein, is a big step towards producing this unequal result. Thus, the greater the value of the land, the less rental income is left from which to compute the value of the structure. I find it most difficult to reconcile these

---

4.

| | | Total Market Value | Land Value | Building Value |
|---|---|---|---|---|
| 1973 | Sears | $13,541,804 | $2,687,538 | $10,854,266 |
| | Macy's | 8,992,300 | 4,542,000 | 4,450,300 |
| 1974 | Sears | $13,282,826 | $2,821,915 | $10,460,911 |
| | Macy's | 8,729,576 | 4,769,000 | 3,960,576 |
| 1975 | Sears | $13,263,674 | $2,963,011 | $10,300,663 |
| | Macy's | 8,846,343 | 5,008,000 | 3,838,343 |
| 1976 | Sears | $12,979,161 | $3,111,161 | $ 9,868,000 |
| | Macy's | 8,830,026 | 5,258,000 | 3,572,026 |

| | | Equalization Rate | Total Assessed Valuation | Assessed Land Valuation | Assessed Building Valuation |
|---|---|---|---|---|---|
| 1973 | Sears | 43% | $ 5,822,975 | $1,155,641 | $ 4,667,334 |
| | Macy's | 40% | 3,596,920 | 1,816,800 | 1,780,120 |
| 1974 | Sears | 42% | $ 5,578,787 | $1,185,204 | $ 4,393,583 |
| | Macy's | 38.13% | 3,328,587 | 1,818,420 | 1,510,167 |
| 1975 | Sears | 42% | $ 5,570,743 | $1,244,464 | $ 4,326,279 |
| | Macy's | 37.28% | 3,297,916 | 1,866,982 | 1,430,934 |
| 1976 | Sears | 40% | $ 5,191,664 | $1,244,464 | $ 3,947,200 |
| | Macy's | 37.20% | 3,284,770 | 1,955,976 | 1,328,794 |

fair market valuations of the Sears structure, which are more than $6,300,-000 higher than those for the larger nearby Macy's store for the years indicated, with the realities of the marketplace. These grossly disparate evaluations of these two structures reinforce my doubts as to the reliability of the valuation approach indorsed by the majority's holding herein. By this approach, assessments are permitted to trail behind the fortunes of owner-operated department stores with the net effect that assessments may vary from year to year as the gross sales vary. Whether this is a preferable or better approach to assessing such structures is not an issue to be decided here. However, it would appear that by this evaluation approach owner-operated department stores are dealt with more favorably than department store operators who rent their facilities and whose rentals are fixed by long-term leases and whose obligations for real estate taxes are not permitted to vary or to fluctuate with their fluctuating gross sales from year to year. The discriminatory and unequal treatment evidenced in pursuing this approach does not permit me to join with the majority in indorsing it. For these reasons, I believe the subject property qualifies as a specialty and can be more reliably and accurately valued by the reproduction cost less depreciation method than by the circuitous and roundabout approach employed herein. Accordingly, I would remand the matter to Special Term for a new trial to fix the assessment of the subject property on the basis of the land value and the value of the structure computed by the depreciated cost method added thereon. Quite apart from my disagreement with the majority's holding, there now exists two totally contradictory rulings in this Department with respect to the designation and valuation of owner-operated department stores whose sole income is that produced by the business conducted thereon. As a result the law in this Department as to the assessment of such structures is in an unsettled posture. At a time when judicial review of property assessments is being sought with such increasing frequency, the assessors as well as the courts which must deal with those issues in the first instance, should be provided with a clearer guide through the developing maze of assessment principles and appraisal technicalities and jargon. If the approach reflected in the majority's determination is a more desirable one, then it is important that the assessors be alerted so that they may implement procedures to track the gross sales of owner-operated department stores and the several variables involved in this approach to facilitate their task in assessing similar properties and to simplify the judicial review proceedings of these assessments in the future.